UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TYRONE ANTWAN WALKER,

          Plaintiff,

v.

                                   Case No. 3:23-cv-511-MMH-MCR

SEAN BAILEY, et al.,

          Defendants.

_____

## ORDER

### I. Status

Plaintiff Tyrone Antwan Walker, an inmate of the Florida Department of Corrections (FDOC), initiated this action by filing a pro se Civil Rights Complaint under 42 U.S.C. § 1983 (Complaint; Doc. 1). He is proceeding in forma pauperis on an Amended Complaint (Amended Complaint or AC; Doc. 14). Walker names seven Defendants – Sergeant Sean Bailey; Lieutenant Carey L. Randall; Officer James R. Crow; Lieutenant Scott W. Durborow; Sergeant M.A. Perkins; Officer D. Lizenbee; and Nurse Gloria Walden. Id. at 2. He raises claims of retaliation, excessive force, failure to intervene, and deliberate indifference to his serious medical needs. See generally id.

This matter is before the Court on Defendants' motions to dismiss. See Defendants Bailey, Randall, Durborow, Perkins, Crow, and Lizenbee's (FDOC

Defendants) Motion to Dismiss Plaintiff's Complaint (FDOC Motion; Doc. 38), and Defendant Gloria Walden's Motion to Dismiss Plaintiff's Amended Complaint (Walden Motion; Doc. 49) (collectively Motions). Walker filed responses to the Motions. See Plaintiff Walker's Reply to the Defendants' Motion to Dismiss or Plaintiff's Opposition (FDOC Response; Doc. 40), and Plaintiff Walker's Opposition to Defendant Gloria Walden's Motion to Dismiss (Walden Response; Doc. 50). The Motions are ripe for review.

## II. Walker's Allegations[1]

Walker alleges that on July 14, 2022, while housed at Union Correctional Institution (Union C.I.), Defendants Durborow and Randall came to his cell and asked if he wanted to see the nurse because Walker's family had called and reported that other unnamed officers had recently physically assaulted him. AC at 10. Walker agreed to see the nurse and allowed Durborow and Randall to apply restraints. Id. Durborow then escorted Walker out of his cell and down the quad hallway; however, before exiting the wing, Walker saw Defendants Perkins and Lizenbee enter his cell and begin throwing and destroying his personal property. Id. According to Walker, Perkins and

---

[1] In considering Defendants' Motions, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to Walker, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint, and may well differ from those that ultimately can be proved.

Lizenbee destroyed his personal property "out of retaliation" for the reported prior assault and to persuade Walker to refuse a medical checkup. Id. Walker asserts he pointed out Perkins and Lizenbee's actions to Durborow, but Durborow did not seem to care. Id. When Walker approached the nurse's station, Defendant Bailey was standing outside the door, and to try to convince Walker to refuse care, stated, "let[']s see what I can steal out of your cell," before walking towards Walker's quad. Id. at 11.

According to Walker, Defendant Walden then examined him, stated he had no injuries, and explained that any bruises he had were probably from a slip and fall. Id. An unnamed officer then escorted Walker back to his cell. When he was entering his quad, Walker saw Perkins exiting Walker's cell while holding a lot of Walker's personal property and legal material. Id. Walker contends that the other inmates in his quad began yelling to Walker that Bailey also took property out of his cell. Id. Walker asserts that because of Defendants' action and "out of anger," he dropped to the floor, so Defendants would have to get the handheld camera for a use of force and Walker would have video evidence of his destroyed cell. Id. at 11-12. But Walker states that Defendants did not retrieve the handheld camera and instead threw Walker into his cell without removing the restraints and closed the cell door. Id. at 12.

Walker asserts that Defendants then turned the handheld camera on, and Walden came to his cell door to check for any new injuries. Id. Walden

3

stated for the second time that she saw no injuries on Walker and the handheld camera was turned off. Id. According to Walker, Randall then entered his cell and removed all of Walker's restraints except for Walker's handcuffs. Id. Walker asked Randall if he would issue "a property confi[s]cation slip" for the taken property and if he would take photos of his cell, to which Randall responded, "'[N]o' . . . 'you get what you get.'" Id. Because Walker believed that Defendants would get away with destroying his property, Walker "snatch[ed] away" from Randall and dropped to the floor, so Defendants would begin filming the inside of his cell. Id. But, according to Walker, Defendants did not begin filming and instead Defendants Randall, Bailey, and Crow entered the cell and started physically beating Walker. Id.

Walker alleges Randall punched him in his left eye and tried to "snatch" his left eye out. Id. He contends Bailey punched him in the mouth multiple times, and Crow did "anything and everything that he could to hurt" Walker. Id. at 12-13. Walker contends that Crow punched, choked, and slammed him against his cell wall. Id. at 13. He also asserts that while Randall was trying to "pull [ ] Walker's eye out," Walker bit Randall's finger but Randall did not stop his assault. Id. Walker alleges that he remained handcuffed during the use of force, and he screamed for help, but no one intervened. Id. Although he did not see Durborow during the use of force, Walker alleges Durborow verbally encouraged Bailey, Crow, and Randall as they were physically assaulting him.

4

Id. According to Walker, when Crow, Randall, and Bailey saw that Walker was injured, they stopped their attack and backed out of his cell before closing the cell door. Id.

Defendants then turned on the handheld camera as Walden came to Walker's cell door to check for injuries for the third time that day. Id. Walden stated, "Inmate Walker['s] lip[] is busted and blood is on the cell window"; but when Walker tried to show her that his eyes were red and swollen and that he had lumps and bruises all over his face and body, Walden stated, "there [are] no other injur[ies]." Id. The next day, Walker submitted a sick-call request for his left eye injury. Id. at 14. Walden examined him again on July 20, 2022, and prescribed Walker a dry eye relief drop. Id. On July 21, 2022, Nurse Jessica Putney examined Walker, advised that he had pink eye, and prescribed him an eye ointment for his left eye. Id. After submitting grievances and other sick-call requests, Walker contends an optometrist examined his left eye and advised him that he no longer has vision in his left eye and prescribed eyeglasses. Id.

Walker asserts Crow issued Walker a disciplinary report for "battery or attempted battery on [a] correctional officer" for the July 14, 2022 incident. Id. As a result of Defendants' actions, Walker alleges that he has lost vision in his left eye and must wear glasses for the rest of his life, and he suffers from

depression and panic attacks. Id. at 9. As relief, he requests injunctive and declaratory relief, as well as punitive and compensatory damages. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d

1359, 1369 (11th Cir. 1998), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 709).

## IV. Discussion

### a. <u>FDOC Motion</u>

The FDOC Defendants argue the Amended Complaint should be dismissed because: (1) Defendants are entitled to Eleventh Amendment sovereign immunity for any claim against them in their official capacity; (2) Walker fails to state an excessive force or retaliation claim against Defendants Perkins and Lizenbee; (3) Defendants Randall, Bailey, Crow, and Durborow are entitled to qualified immunity; (4) Walker is not entitled to compensatory damages under 42 U.S.C. § 1997e(e); (5) Walker's request for punitive damages is barred under 18 U.S.C. § 3626(a)(1)(A); (6) Walker fails to state an Eighth Amendment claim; and (7) Walker is not entitled to injunctive relief. <u>See generally</u> FDOC Motion. The Court addresses each argument in turn.

### 1. *Eleventh Amendment Immunity*

The FDOC Defendants contend that to the extent Walker sues them in their official capacities for monetary damages, that request should be dismissed because they are entitled to Eleventh Amendment immunity. FDOC Motion at 6-7. They are correct that any request for monetary damages against FDOC Defendants in their official capacities is barred by the Eleventh Amendment. <u>See, e.g.</u>, <u>Hayes v. Sec'y, Fla. Dep't of Child. & Families</u>, 563 F.

App'x 701, 703 (11th Cir. 2014) ("The Eleventh Amendment . . . prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state.").[2] As such, the FDOC Motion is due to be granted as to this argument.

## 2. First Amendment Retaliation

The FDOC Defendants also argue that Walker has not stated a retaliation claim against Defendants Lizenbee and Perkins. FDOC Motion at 9-12. In support of that contention, they assert Walker shows neither that Lizenbee and Perkins took adverse action against Walker nor a causal connection between an adverse act and protected speech. Id. at 11.

"The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (citation omitted). It is firmly established that "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v.

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

<u>Mosley</u>, 532 F.3d 1270, 1276 (11th Cir. 2008). An inmate may pursue a cause of action against a prison official who retaliated against him for engaging in that protected speech. <u>Id.</u>

> To establish a retaliation claim, a prisoner must demonstrate "that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal quotation marks and citation omitted). [A plaintiff] can prevail on a retaliation claim if "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." <u>Smith v. Mosley</u>, 532 F.3d 1270, 1276 (11th Cir. 2008).

<u>Williams v. Radford</u>, 64 F.4th 1185, 1192 (11th Cir. 2023). As to the third prong, a plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to show the requisite motive. <u>Crawford-El v. Britton</u>, 523 U.S. 574, 600 (1998) (citations omitted). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's grievance or lawsuit." <u>Jemison v. Wise</u>, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted).

Here, Walker alleges Perkins and Lizenbee destroyed his personal property out of retaliation for a family member calling the facility and

reporting that a few days earlier, "some officers" physically assaulted Walker. AC at 10. But it is unclear whether the speech at issue – a family member's phone call to the prison – is constitutionally protected speech attributable to Walker for purposes of a First Amendment retaliation claim. Nevertheless, even assuming this speech is protected, Walker fails to allege sufficient facts showing that the phone call subjectively motivated Perkins and Lizenbee to search Walker's cell and destroy his personal property. Indeed, Walker does not allege that Lizenbee or Perkins (or any other named Defendant) participated in the earlier staff abuse that prompted his family's phone call to prison staff, and he asserts no other causal connection between the alleged protected conduct and Perkins or Lizenbee's actions. Instead, Walker simply states in conclusory fashion that "all [officers] hate when an inmate get[s] the[ir] family to report a staff abuse." AC at 10. But that allegation amounts to mere speculation unsupported by facts. Without more, Walker's claim is merely conceivable, not plausible. As such, The FDOC Motion is due to be granted as to this issue.

### 3. *Eighth Amendment and Qualified Immunity*

In <u>Sconiers v. Lockhart</u>, 946 F.3d 1256, 1265 (11th Cir. 2020), the Eleventh Circuit reviewed "the principles applicable to Eighth Amendment excessive-force" claims. In doing so, the Court instructed:

> The Eighth Amendment, among other things, prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. As the Supreme Court has explained, "the unnecessary and wanton infliction of pain" qualifies under the Eighth Amendment as proscribed "cruel and unusual punishment." <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992). Nevertheless, the Supreme Court has instructed that what rises to the level of an "unnecessary and wanton infliction of pain" differs based on the type of Eighth Amendment violation alleged. <u>Id.</u>
>
> Since [the plaintiff] asserts excessive-force . . . claims, "the core judicial inquiry" requires [the Court] to consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Wilkins</u>, 559 U.S. at 37 (citation and quotation marks omitted).[3] This standard requires a prisoner to establish two elements – one subjective and one objective: the official must have both "acted with a sufficiently culpable state of mind" (the subjective element), and the conduct must have been "objectively harmful enough to establish a constitutional violation." <u>Hudson</u>, 503 U.S. at 8 (cleaned up).
>
> With respect to the subjective element, "to have a valid claim on the merits of excessive force in violation of [the Eighth Amendment], the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm."

---

[3] <u>Wilkins v. Gaddy</u>, 559 U.S. 34 (2010) (per curiam).

12

> Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002); see also Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010).
>
> As for the objective component of an excessive-force violation, it focuses on whether the official's actions were "harmful enough," Hudson, 503 U.S. at 8, or "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991), to violate the Constitution. "Not every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins, 559 U.S. at 37. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 37-38. Instead, the Eighth Amendment prohibits force that offends "contemporary standards of decency," regardless of whether "significant injury is evident," though the extent of injury may shed light on the amount of force applied or "whether the use of force could plausibly have been thought necessary." Wilkins, 559 U.S. at 37 (citation and internal quotation marks omitted).

Id. at 1265-66; see also McKinney v. Sheriff, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam). In determining whether an officer's use of force was applied maliciously and sadistically for the purpose of causing harm, courts consider five distinct factors:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as

reasonably perceived by the responsible officials on the basis of facts known to them.

Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986); Hudson, 503 U.S. at 7). When considering these factors, courts "must also give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'" Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)).

Notably, a lack of serious injury, while not dispositive, is relevant to the inquiry. Wilkins, 559 U.S. at 38; Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (per curiam). The United States Supreme Court has explained:

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." Ibid.[4] (quoting Whitley, supra, at 321). The extent of injury may also provide some indication of the amount of force applied. . . . An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid

---

[4] Hudson, 503 U.S. at 7.

excessive force claim. Id. at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).[5]

> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

Wilkins, 559 U.S. at 37-38. The Eleventh Circuit has stated:

> A plaintiff who suffers only de minimis injury does not necessarily lack a claim for excessive force under § 1983. Stephens,[6] 852 F.3d at 1328 n.33; Saunders v. Duke, 766 F.3d 1262, 1270 (11th Cir. 2014). However, the resulting injuries can be evidence of the kind or degree of force that was used by the officer. See Crocker v. Beatty, 995 F.3d 1232, 1251 (11th Cir. 2021).

Charles v. Johnson, 18 F.4th 686, 700 (11th Cir. 2021).

Further, "an officer can be liable for failing to intervene when another officer uses excessive force." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000); Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998). This liability, however, only arises when the officer is able to intervene and fails to do so. See Keating v. City of Miami, 598 F.3d 753, 764 (11th Cir. 2010); see also Fils v. City of Aventura, 647 F.3d 1272, 1290 n.21 (11th Cir.

---

[5] See Johnson, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

[6] Stephens v. DeGiovanni, 852 F.3d 1298 (11th Cir. 2017).

2011); <u>Brown v. City of Huntsville</u>, 608 F.3d 724, 740 n.25 (11th Cir. 2010) ("Because the relevant events happened so quickly, the record does not reflect any point at which [the officer] could have intervened to prevent [another officer's] use of excessive force . . . .").

### Defendants Perkins and Lizenbee

The FDOC Defendants argue that Walker fails to state an excessive force claim against Perkins and Lizenbee because he fails to allege Perkins or Lizenbee participated in using force or otherwise failed to intervene. FDOC Motion at 7-9. In his Response, Walker seems to argue that Perkins and Lizenbee were senior officers, and thus the Court can infer that they knew of the use of force. FDOC Response at 3.

Here, the Court finds Walker fails to allege sufficient facts to connect Perkins and Lizenbee to an Eighth Amendment claim of excessive force or failure to intervene. If Walker is trying to hold Perkins and Lizenbee liable based on the theory of <u>respondeat</u> <u>superior</u>, supervisory officials cannot be held vicariously liable under § 1983 for the unconstitutional acts of their subordinates. <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003), <u>abrogated in part on other grounds by</u> <u>Randall v. Scott</u>, 610 F.3d 701 (11th Cir. 2010). Instead, a supervisor can be liable only when that supervisor "personally participates in the alleged unconstitutional conduct or when there is a causal connection" between the supervisor's actions and the constitutional

16

deprivation. Id. Because Walker does not allege that Perkins and Lizenbee personally participated in the use of force or failure to intervene, the viability of his supervisory claims depends on whether he plausibly alleges a causal connection between Perkins and Lizenbee's actions and the alleged constitutional deprivation.

Walker may establish the requisite causal connection in one of three ways: (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [or she] fails to do so"; (2) "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights"; or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinate would act unlawfully and failed to stop them from doing so." Id. (internal citations and quotation marks omitted). However, Walker does not allege any facts suggesting a causal connection. For instance, he does not allege a history of widespread abuse, nor does he allege that Perkins and Lizenbee knew of a need to train their subordinates and failed to do so. Walker also does not allege that his injuries stemmed from a prison custom or policy. As such, Walker fails to state an Eighth Amendment claim against Perkins and Lizenbee, and the FDOC Motion is due to be granted on this issue.

**Defendants Randall, Bailey, Crow, and Durborow**

Next, the FDOC Defendants contend Walker fails to state an Eighth Amendment claim against Defendants Randall, Bailey, Crow, and Durborow because Walker's medical records show he suffered no compensable injuries, and he fails to allege they applied force maliciously and sadistically to cause harm. FDOC Motion at 27-29. They also argue that Randall, Bailey, Crow, and Durborow are entitled to qualified immunity. Id. at 12-14. According to the FDOC Defendants, Walker's allegations show he "tri[ed] to get [Defendants] to use force against him" and Randall, Bailey, Crow, and Durborow's reactionary conduct was allowed under the law to quell a disturbance. Id. at 14.

At this stage of the proceedings and taking Walker's allegations as true, as the Court must, Walker has sufficiently alleged a claim of excessive force under the Eighth Amendment against Randall, Bailey, and Crow, as well as a failure to intervene claim against Durborow. Walker asserts that while he was in hand restraints, Randall punched and tried to "snatch out" his left eye; Bailey repeatedly punched him in the face and mouth; and Crow choked, punched, and slammed him into the cell wall. AC at 12-13. He also alleges that Durborow verbally encouraged Randall, Bailey, and Crow during the physical assault and did not respond to Walker's screams for help. Id. at 13. According to Walker, because of this attack, he suffered bruises and lumps all over his face and body, and he lost vision in his left eye and now must wear eyeglasses.

18

<u>Id.</u> at 9. These allegations are sufficient to state plausible Eighth Amendment claims against these Defendants.

As to the FDOC Defendants' qualified immunity argument, because Walker asserts facts that, accepted as true, amount to an Eighth Amendment violation under clearly established law, Randall, Crow, Bailey, and Durborow are not entitled to qualified immunity. See <u>Dobbins v. Giles</u>, 451 F. App'x 849, 851 (11th Cir. 2012) (holding that when a plaintiff asserting an excessive force claim "has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment demonstrating that the officer used force maliciously and sadistically to cause harm, he has necessarily established the two prongs required to defeat a defense of qualified immunity") (internal quotation marks omitted). Thus, the FDOC Motion is due to be denied as to these arguments.

### 4. Compensatory Damages

The FDOC Defendants also argue that Walker is not entitled to compensatory damages under 42 U.S.C. § 1997e(e) because he has not alleged that he suffered more than <u>de minimis</u> physical injuries resulting from FDOC Defendants' actions. FDOC Motion at 15-19.

Under 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical

injury or the commission of a sexual act." To satisfy § 1997e(e), a prisoner must assert a physical injury that is more than <u>de</u> <u>minimis</u>. <u>Brooks v. Warden</u>, 800 F.3d 1295, 1307 (11th Cir. 2015). But the physical injury need not be significant. <u>See</u> <u>Thompson v. Sec'y, Fla. Dep't of Corr.</u>, 551 F. App'x 555, 557 (11th Cir. 2014).

Here, Walker complains about an injury to his left eye that prompted several sick call requests and allegedly caused a permanent loss of vision in that eye. AC at 14. Taking those allegations as true, the Court finds Walker asserts a physical injury that is greater than <u>de</u> <u>minimis</u>. Thus, the FDOC Motion is due to be denied to the extent that these Defendants assert Walker's request for compensatory damages is precluded under § 1997e(e).

### 5. *Punitive Damages*

The FDOC Defendants further argue that Walker's request for punitive damages must be dismissed because it is statutorily barred. FDOC Motion at 20-27. According to Defendants, 18 U.S.C. § 3626(a)(1)(A) precludes punitive damages in all civil rights cases because such damages are "prospective relief." <u>Id.</u> at 20. In support of their contention, the FDOC Defendants assert that punitive damages "are never necessary to correct a violation of a federal right." <u>Id.</u> at 24. They also contend that even if an award of punitive damages is necessary to correct such a legal violation, that award could not satisfy the PLRA's "stringent limitations" as the relief is neither "narrowly drawn" nor

20

"the least intrusive means necessary to correct the violation of the Federal right." <u>Id.</u> at 21.

Section 3626(a)(1)(A) provides:

> (1) Prospective relief. – (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). The FDOC Defendants are correct that punitive damages are considered "prospective relief" under § 3626. <u>See</u> <u>Johnson v. Breeden</u>, 280 F.3d 1308, 1325 (11th Cir. 2002) (holding "punitive damages are prospective relief"), <u>abrogated on other grounds by</u> <u>Kingsley v. Hendrickson</u>, 576 U.S. 389, 395 (2015)). But their argument that punitive damages, as "prospective relief" under § 3626, are precluded in prisoner civil rights actions is wholly misplaced. Indeed, they cite <u>Johnson</u> as their primary support for this notion; but in <u>Johnson</u>, the court did not hold that punitive damages were unavailable under § 3626 for § 1983 cases. Instead, in <u>Johnson</u>, the Eleventh Circuit clarified, in the context of a § 1983 civil rights case, that § 3626(a)(1)(A) merely provides the framework for awarding punitive damages. <u>Id.</u> at 1325.

The court explained "a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case . . . [and] that such awards should be imposed against no more defendants than necessary to serve that deterrent function and that they are the least intrusive way of doing so." Id.

While the Court is unaware of an Eleventh Circuit case that has addressed Defendants' specific argument here, the Court cannot disregard the Eleventh Circuit's long-standing recognition that punitive damages are available in prisoner civil rights actions. Indeed, the Eleventh Circuit has held that 42 U.S.C. § 1997e(e) permits claims for punitive damages for § 1983 claims without a physical injury requirement. Hoever v. Marks, 993 F.3d 1353, 1364 (11th Cir. 2021).[7] And it has held "[p]unitive damages are appropriate in § 1983 cases 'where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights." Barnett v. MacArthur, 715 F. App'x 894, 905 (11th Cir. 2017). Also, the Eleventh Circuit Civil Pattern Jury Instructions on § 1983 damages include an instruction on awarding punitive damages. See Eleventh Circuit Pattern Jury Instruction, Civil Cases, Civil Rights – 42 U.S.C. § 1983 Claims – Damages § 5.13.

---

[7] In Hoever, the Eleventh Circuit declined to address the availability of punitive damages in prison condition cases under 18 U.S.C. § 3626. Hoever, 993 F.3d at 1364 n.5.

The Court also finds persuasive other district court decisions explicitly finding that § 3626(a)(1)(A) does not preclude an award of punitive damages in prisoner civil cases. See, e.g., Brown v. Semple, No. 3:16cv376, 2018 WL 4308564, at *14 (D. Conn. Sept. 10, 2018) (collecting cases); Douglas v. Byunghak Jin, No. 11-0350, 2014 WL 1117934, at *4-5 (W.D. Penn. Mar. 20, 2014) (reasoning that if Congress "intended to abolish punitive damages in all prisoner litigation under the PLRA, it would have done so directly, and in much plainer terms").[8] Thus, the Court declines to find that § 3626 precludes a request for punitive damages in this § 1983 action, and the FDOC Motion is due to be denied on this issue.

### 6. Injunctive Relief

Last, the FDOC Defendants argue that Walker's request for injunctive relief should be dismissed because he fails to allege a continuing irreparable harm, and his transfer to Florida State Prison renders his request moot. FDOC Motion at 29-31. The Eleventh Circuit has held that "[p]risoners' claims for injunctive or declaratory relief regarding prison conditions generally become moot when the prisoner transfers to another prison." Owens v. Sec'y, Fla. Dep't

---

[8] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

of Corr., 602 F. App'x 475, 476 (11th Cir. 2015) (citation omitted) (holding that the prisoner's claims for injunctive relief were rendered moot by the prisoner's transfer to another prison.). "The reason for this rule is that injunctive relief is 'a prospective remedy, intended to prevent future injuries,' and, as a result, once the prisoner has been [transferred or] released, the court lacks the ability to grant injunctive relief and correct the conditions of which the prisoner complained." Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277 (2011). There is, however, a narrow exception to the doctrine of mootness when a challenged action is capable of being repeated and evades review, but this exception applies only when: "(1) there is a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." Al Najjar v. Ashcroft, 273 F.3d 1330, 1336 (11th Cir. 2001) (internal quotation marks omitted).

Here, Walker's request for injunctive relief involves conditions and specific officers at Union C.I. AC at 9 (requesting "preliminary and permanent injunction ordering all [D]efendants to stop retaliating on [ ] Walker, and to stay away from [ ] Walker to protect him from future violence."). Walker is no longer housed at Union C.I. and is currently incarcerated at Florida State Prison. See Corrections Offender Network, Florida Department of Corrections,

24

available at www.dc.state.fl.us (last visited July 1, 2024). As such, Walker's transfer to a different facility, away from Defendants, moots his request for injunctive relief. Walker does not argue that any exception to the mootness doctrine applies and there is no indication that Walker will experience the same alleged conditions at Florida State Prison. See Sims v. Sec'y, Fla. Dep't of Corr., No. 21-13222, 2023 WL 193761, at *2 (11th Cir. 2023) (finding a request for injunctive relief against the Secretary of the FDOC moot because the plaintiff's claims only applied to conditions at a specific jail where he was no longer incarcerated rather than a challenge to a statewide FDOC policy); see also Cole v. Esely, No. 3:20-cv-935-MMH-PDB, 2022 WL 218483, at *7 (M.D. Fla. Jan. 25, 2022) (finding the plaintiff's transfer to another facility mooted his request for injunctive relief because the use of force occurred at another institution). Thus, the FDOC Motion is due to be granted to the extent Walker's request for injunctive relief against the FDOC Defendants is due to be dismissed as moot.

### b. **Walden Motion**

Defendant Walden asserts that Walker's claim against her should be dismissed because: (1) he fails to state an Eighth Amendment claim against her; (2) Walker has not complied with Chapter 766, Florida Statutes; and (3) Walker has not alleged the requisite intent to entitle him to punitive damages. See generally Walden Motion. Because Walker fails to state a plausible Eighth

Amendment claim against Walden, the Court need not address her other arguments.

*Eighth Amendment*

Walden contends Walker fails to state a plausible claim of deliberate indifference to his serious medical needs. Walden Motion at 3-7. She argues Walker does not allege any facts suggesting that she knew of a risk of serious harm to Walker in her assessment of him and that she disregarded that risk. <u>Id.</u> at 5. According to Walden, at the time of her interactions with Walker, he suffered from "'a busted lip,' bruises, and swelling in his eyes, which do not arise to an objectively serious medical need." <u>Id.</u> She asserts that Walker admits he sought medical treatment from a separate provider afterward, and that the other provider also did not diagnose him with any serious ailment, which reinforces the notion that he did not suffer from a medical need so obvious that a lay person would easily recognize the need for medical attention. <u>Id.</u> at 4. She also maintains that he fails to allege that his vision loss resulted from any inaction or action on the part of Walden. <u>Id.</u> at 7.

In his Response, Walker argues he has stated a plausible deliberate indifference claim against Walden because she "lied on the post-use-of-force paperwork to cover for the other Defendants," which delayed his treatment. Walden Response at 5. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials

26

must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. <u>Swain v. Junior</u>, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing <u>Farmer</u>, 511 U.S. at 834).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" <u>Keohane v. Fla. Dep't of Corr. Sec'y</u>, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence standard" in determining whether an official acted with deliberate indifference to that serious medical need. <u>See</u> <u>Hoffer v. Sec'y, Fla. Dep't of Corr.</u>, 973 F.3d 1263, 1270 (11th Cir. 2020) ("To establish deliberate indifference, a plaintiff must demonstrate that the prison officials (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence.") (internal quotations omitted)); <u>see also</u> <u>Wade v. McDade</u>, -- F.4th --, 2024 WL 3354963, at *2 (11th Cir. July 10, 2024). Recently, however, the Eleventh Circuit determined that those standards conflicted with the

27

Supreme Court's decision in <u>Farmer</u> and clarified that courts in this circuit

should apply the "subjective recklessness standard" as used in criminal law.

<u>See</u> <u>Wade</u>, 2024 WL 3354963, at *1. Specifically, the Eleventh Circuit has

instructed that to establish liability on an Eighth Amendment deliberate

indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [<u>Farmer</u>, 511 U.S. at 834].
>
> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," <u>id.</u> at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff – with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." <u>Id.</u> at 844-45.

<u>Wade</u>, 2024 WL 3354963, at *7.[9]

"As applied in the prison context, the deliberate-indifference standard

sets an appropriately high bar." <u>Swain</u>, 961 F.3d at 1285. Indeed, the law is

well settled that the Constitution is not implicated by the negligent acts of

corrections officials and medical personnel. <u>Daniels v. Williams</u>, 474 U.S. 327,

---

[9] The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in <u>Wade</u>, finding that to the extent prior Eleventh Circuit deliberate indifference cases are <u>not</u> inconsistent with <u>Wade</u>, "they should continue to be cited as binding precedent." <u>Wade</u>, 2024 WL 3354963, at *10 (Jordan, J., concurring).

330-31 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986) ("As we held in

<u>Daniels</u>, the protections of the Due Process Clause, whether procedural or

substantive, are just not triggered by lack of due care by prison officials."). The

Eleventh Circuit has also noted that "[n]othing in our case law would derive a

constitutional deprivation from a prison physician's failure to subordinate his

own professional judgment to that of another doctor; to the contrary, it is well

established that 'a simple difference in medical opinion' does not constitute

deliberate indifference." <u>Bismark v. Fisher</u>, 213 F. App'x 892, 897 (11th Cir.

2007) (quoting <u>Waldrop</u>, 871 F.2d at 1033). Similarly, "the question of whether

governmental actors should have employed additional diagnostic techniques or

forms of treatment 'is a classic example of a matter for medical judgment' and

therefore not an appropriate basis for grounding liability under the Eighth

Amendment." <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation

omitted).

Here, taking Walker's allegations as true, as the Court must, Walker has

not presented sufficient factual allegations to plausibly assert he suffered from

a medical need that was objectively sufficiently serious. Following the use of

force, Walker alleges that Walden assessed his injuries and noted his "lips

[were] busted and blood [was] on the cell window." AC at 13. He contends that

at that time, he also "had lumps and bruises all over his face and body." <u>Id.</u> But

"a plaintiff's statement that he experienced some pain or discomfort is not

enough; the prisoner's pain must be objectively so severe that the failure to treat it deprives him of the minimal civilized measure of life's necessities." Brennan v. Thomas, 780 F. App'x 813, 820 (11th Cir. 2019) (per curiam) (internal quotation marks omitted). Indeed, temporary swelling of the lip and face are not injuries so objectively severe that one would know of Walker's alleged need for medical attention.

Also, as to his left eye injury, Walker does not allege that Walden acted with subjective recklessness to Walker's left eye pain at the time of Walden's post-use-of-force assessment, nor does he maintain that Walden failed to reasonably respond to Plaintiff's eye injury. Instead, Walker asserts he did not complain of left eye pain until the next day when he submitted a sick call request. AC at 13-14. In response to that sick call request, Walden again examined Walker and prescribed him eye drops. Id. at 14. A few days later, another nurse examined Walker's left eye and prescribed him an eye ointment. Id. And eventually, medical referred him to an optometrist who advised Walker about his vision loss. Id. According to Walker's own admissions, once Walden learned of his eye injury, she provided some amount of medical care, but Walker merely disagreed with the type and quantity she provided. Such disagreement does not rise to the level of an Eighth Amendment violation. See Adams, 61 F.3d at 1545 ("[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment

'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." (quoting Estelle, 429 U.S. at 107)); Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [the inmate] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference."). Walker's allegations fail to support an inference that Walden was subjectively aware that her treatment of Walker caused a substantial risk of serious harm to him or that she failed to respond reasonably to that risk. Thus, Walker has not alleged a plausible claim of deliberate indifference to a serious medical need, and Walden's Motion is due to be granted on that argument.

Accordingly, it is

**ORDERED:**

1.    Defendants' Bailey, Randall, Durborow, Perkins, Crow, and Lizenbee's Motion to Dismiss (Doc. 38) is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** to the extent that Walker's Eighth Amendment and First Amendment Retaliation claims against Defendants Perkins and Lizenbee, as well as his requests for monetary damages against all Defendants in their official capacities and injunctive relief are **DISMISSED with prejudice**. The Motion is otherwise **DENIED**.

2.      Defendant Walden's Motion to Dismiss (Doc. 49) is **GRANTED** to the extent that Walker's Eighth Amendment claim against her is **DISMISSED with prejudice**.

3.      The **Clerk** shall terminate M.A. Perkins, D. Lizenbee, and Gloria Walden as Defendants in this case.

4.      Defendants Randall, Durborow, Crow, and Bailey shall file an answer to the Amended Complaint (Doc. 14) by **August 14, 2024**.

5.      The Court will issue a separate order setting case management deadlines.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of July, 2024.


**MARCIA MORALES HOWARD**
United States District Judge


Jax-7
C:      Tyrone Antwan Walker, B04225
        Counsel of record